```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

**ELINA CHERNYAK,**

       **Plaintiff,**

    **vs.**                                    **Civil Action 2:11-CV-449**
                                                        **Magistrate Judge King**

**PAULETTE BRICKER, *et al.*,**

       **Defendants.**

## OPINION AND ORDER

This matter is before the Court on several objections raised during the course of three depositions. *Final Pretrial Order*, Doc. No. 33, p. 4 (identifying depositions and objections). The Court will address each objection in turn.

**I.    Deposition of Lenard Presutti,[1] D.O.**

Plaintiff has identified Lenard Presutti, D.O., as a trial witness; his deposition was taken on December 17, 2010. *Final Pretrial Order*, p. 3; *Presutti Deposition*. Dr. Presutti practices at and is the residency director for the family medicine program at O'Bleness Hospital. *Presutti Deposition*, p. 6. Dr. Presutti supervised plaintiff when she was a first-year resident at O'Bleness Hospital. *Id*. at 6-7. According to Dr. Presutti, plaintiff started her residency on December 16, 2007 and completed her first year on

---

[1] The spelling of this witness's name appears as "Presuitti," *Final Pretrial Order*, pp. 3-4, and "Presutti," *Deposition of Lenard Presutti, D.O.*, Doc. No. 26 ("*Presutti Deposition*").

January 16, 2009.  *Id*. at 8.

> **A.   Plaintiff's Objections (Page 10, Line 18; Page 11, Lines 1, 14)**

After Dr. Presutti referred to his notes when responding to a question, plaintiff raised a continuing objection:

> Q:   And why did she [plaintiff] not have a contract [with O'Bleness Hospital] after that [January 2009]?
>
> A:   Well, let me see.  I think what happened we – I had met with her on the 14th of January of 2009 and had a conversation regarding her performance as a first-year resident.  And I had some concerns about multiple things that had happened during that year, and my notes say that she was performing in the lower half –
>
> MR. FRIES:   Objection.
>
> A:   -- academically.
>
> Q:   You can go ahead.
>
> A:   Okay.  We had some reliability issues because she was sick a lot.  She missed work at critical times.  The other residents felt uncomfortable.
>
> MR. FRIES:   Objection.  I'm going to move to strike his testimony to the extent he's reading from notes and these are notes of conversations and comments from other people.  This is not testimony from his personal knowledge.
>
> MR. MANN:   I understand.
>
> BY MR. MANN:
>
> Q:   Doctor, are these things that were reported to you as part of your supervisory capacity in supervising Dr. Chernyak [plaintiff]?
>
> A:   Yes.
>
> Q:   Please continue.
>
> MR. FRIES:   Please note a continuing objection.
>
> MR. MANN:   Sure.

*Id*. at 10-11.

2

Rule 602 of the Federal Rules of Evidence permits a witness to testify "only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." However, "the threshold for admitting testimony under Rule 602 is low." *United States v. Kelsor*, 665 F.3d 684, 697 (6th Cir. 2011). "Generally, testimony should be permitted 'so long as a reasonable person could believe that the witness had personal knowledge. In other words, the testimony is excluded only if, as a matter of law, no juror could reasonably conclude that the witness perceived the facts to which [he] testifies.'" *Vehicle Prot. Plus, L.L.C. v. Premier Dealer Servs.*, 650 F. Supp. 2d 800, 807 (E.D. Tenn. 2009) (quoting 27 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 6022 (2d ed. 2007)).

After review of the relevant portion of the transcript, the Court is persuaded that a juror could reasonably conclude that Dr. Presutti perceived the facts to which he testified.[2] The Court therefore concludes that Dr. Presutti's testimony following the objection sufficiently confirms that the information is within his personal knowledge. Accordingly, plaintiff's objections on page 10, line 18 and page 11, lines 1 and 14 are **OVERRULED**.

**II. Deposition of Imber Coppinger, D.O.**

Defendants have identified Imber Coppinger, D.O., as one of their trial witnesses, *Final Pretrial Order*, p. 3, and her deposition was taken on October 22, 2009. *Deposition of Imber Coppinger, D.O.*, Doc. No. 25 ("*Coppinger Deposition*"). Dr. Coppinger practices family

---

[2] Of course, a witness may use a writing to refresh his memory. *See* Fed. R. Evid. 612.

medicine at Athens Health Solutions in Athens, Ohio.  *Id*. at 4-5.  Plaintiff was a medical student on rotation in her office for one week prior to the September 15, 2006 automobile accident at issue in this case ("the accident"), *Complaint*, Doc. No. 2, ¶ 2, and for three weeks after the accident.  *Id*. at 5.  Dr. Coppinger also treated plaintiff as a patient during that time.  *Id*. at 5.  Although Dr. Coppinger first saw plaintiff as a patient on October 11, 2006, *id*. at 6, plaintiff filled out a first annual exam history form on September 22, 2006 ("history form").  *Id*. at 9.

    **A.    Plaintiff's Objection (Page 11, Line 8)**

Plaintiff raised a continuing objection when Dr. Coppinger was asked about the history form:

> [Q:]    Again, this [the history form] is what Dr. Chernyak [plaintiff] filled in herself?
>
> A:    When she was a medical student, Elina Chernyak circled that she had a head injury--
>
> MR. FRIES:    Just for the record, I'm going to object to-- are you reading from this history form?
>
> THE WITNESS:    I am.
>
> MR. FRIES:    Okay.  Well, I'll just note a continuing objection to testimony about this form and you can go ahead.
>
> THE WITNESS:    Okay.
>
> BY MR. MANN:
>
> Q:    Doctor, before we go on with that, let me just clean up a few things with that.  This history form, is that a form that is routinely filled out by new patients coming to your office?
>
> A:    Every new patient fills out this form in my practice.
>
> Q:    Do you personally witness the person filling it out or do you--

>   A:   No, I do not.  It comes in filled out, and I review it before I see the patient.
>
>   Q:   Did you, in fact, review it with Elina Chernyak?
>
>   A:   I did, in fact, review it with Elina Chernyak.
>
>   Q:   And are you convinced that what the information in there is what Dr. Chernyak provided and is accurate?
>
>   A:   Absolutely.

*Id*. at 11-12.

The Court presumes that plaintiff objects because she believes that this testimony is not within Dr. Coppinger's personal knowledge and constitutes hearsay.  However, Dr. Coppinger's testimony establishes that she discussed the history form with plaintiff and ensured its accuracy.  *Id*. at 11-12.  Moreover, the information contained in the history form completed by plaintiff constitutes an admission by plaintiff.  *See* Fed. R. Evid. 801(d)(2)(A) (providing that a statement is not hearsay when "(t)he statement is offered against a party and is (A) the party's own statement in either an individual or representative capacity[.]").  Accordingly, plaintiff's objection on page 11, line 8 is **OVERRULED**.

**B.   Plaintiff's Objection (Page 16, Line 1)**

Dr. Coppinger's progress notes dated October 11, 2006 indicate that plaintiff suffered traumatic head injuries at ages 6 and 17.  *Coppinger Deposition*, p. 15.  Dr. Coppinger confirmed that plaintiff discussed with her the details of those injuries.  *Id*.  When asked to share those details, plaintiff raised an objection, but did not explain the basis for the challenge.  *Id*. at 15-16.

Again, the Court presumes that plaintiff objects to this testimony as information not within Dr. Coppinger's personal knowledge

and inadmissible hearsay. However, for the same reasons articulated *supra*, plaintiff's objection on page 16, line 1 is **OVERRULED**.

    **C.    Plaintiff's Objection (Page 18, Lines 4 and 8)**

When asked about progress notes that defense counsel had difficulty reading, Dr. Coppinger testified:

> A:    Okay. Brother, motor vehicle accident – died in a motor vehicle accident age 21. Violent – and it's cut off. But I'm guessing it says –
>
> MR. FRIES:    I'm going to object to the doctor guessing. If you're testifying about the history that you've taken from her?
>
> THE WITNESS:    Uh-huh.
>
> MR. FRIES:    I'm going to object to guessing if you don't know what your patient said. I'm going to object to her answering the question.

*Id*. at 18.

The Court agrees that Dr. Coppinger's testimony in this regard is properly characterized as speculation not within his personal knowledge. Plaintiff's objection on page 18, lines 4 and 8 is **SUSTAINED**.

    **D.    Plaintiff's Objection (Page 20, Line 3)**

Dr. Coppinger confirmed that the notation "PTSD" on her chronic problem list refers to posttraumatic stress disorder. *Id*. at 19. When defense counsel asked whether that notation meant that posttraumatic stress disorder was something that plaintiff would have had prior to the accident, plaintiff objected without elaboration. *Id*. at 19-20.

The basis of plaintiff's objection is not apparent. After review

of the relevant portion of the *Coppinger Deposition*, the Court concludes that Dr. Coppinger is testifying as to what her own notes mean, which is something within her personal knowledge. Accordingly, plaintiff's objection on page 20, line 3 is **OVERRULED**.

    **E.    Plaintiff's Objection (Page 21, Line 22)[3]**

When Dr. Coppinger was asked whether plaintiff ever told her who had initially diagnosed plaintiff with posttraumatic stress disorder, plaintiff objected without explanation. *Id*. at 21.

Assuming that plaintiff has raised a hearsay objection, the Court concludes that this testimony is admissible under Fed. R. Evid. 801(d)(2)(A). Plaintiff's objection on page 21, line 22 is **OVERRULED**.

    **F.    Plaintiff's Objection (Page 28, Lines 4 and 11)**

Plaintiff raised two objections when Dr. Coppinger was asked about posttraumatic stress disorder and plaintiff's alleged sleep issues:

> Q:    What were some of those other things that you saw her [plaintiff] for?
>
> A:    Well, I was diagnosing her with PTSD at the time. And we made goals. But I do think that a lot of PTSD was specifically connected with the car accident. Because she talks about the sleep – continuing sleep issues and those things.
>
> Q:    And you don't know whether she had those issues before this or not?
>
>     MR. FRIES:    Objection.
>
> BY MR. MANN:

---

[3] The parties refer to an objection on page 21, line 3 of the *Coppinger Deposition*. *Final Pretrial Order*, p. 4. Although no objection appears on that line, an objection does appear on line 22 on the same page. In light of the fast-approaching trial date, the Court will presume, in the interest of efficiency, that the parties intended to present the objection on line 22 for the Court's consideration.

Case: 2:11-cv-00449-NMK Doc #: 37 Filed: 05/29/12 Page: 8 of 18  PAGEID #: 533

```
Q:    You can go ahead and answer.

A:    That's true.

Q:    If she did have those issues before this, that would
      perhaps indicate that not all of these problems are
      coming from the automobile accident; would it not?

MR. FRIES:        Objection.

THE WITNESS:      True.
```

*Id.* at 27-28.

Again, the bases of plaintiff's objections are not immediately apparent.  As to the first objection, Dr. Coppinger was testifying as to matters within her personal knowledge, *i.e.*, whether or not she knows, based on her evaluation and/or discussions with plaintiff, if plaintiff experienced sleep issues prior to the accident.  To the extent that plaintiff's second objection may be based on Dr. Coppinger's competence, under Rule 702 of the Federal Rules of Evidence, a witness may qualify as an expert by reason of his or her "knowledge, skill, experience, training, or education[.]"  Here, the context of the witness' testimony indicates that Dr. Coppinger is a doctor with experience treating patients and she previously testified, without objection from plaintiff, as to diagnostic criteria for posttraumatic stress disorder.  *Id*. at 20.  Without some elaboration by plaintiff as to the basis of her objection, the Court cannot conclude that her challenge is meritorious.  Accordingly, based on the present record, plaintiff's objections on page 28, lines 4 and 11 are **OVERRULED**.

    **G.**    **Plaintiff's Objection (Page 29, Line 17)**

Plaintiff objected to Dr. Coppinger's interpretation of plaintiff's comments as recorded in Dr. Coppinger's notes:

> Q: On your notes of that visit – I'm sorry, on the 4/9/07 visit?
>
> A: Yes.
>
> Q: She [plaintiff] says when she was in Florida she had lots of kindred spirits. What did you take to mean from that whole discussion?
>
> > MR. FRIES: Objection. Go ahead.
> >
> > THE WITNESS: Kindred spirits is a term that means people of like minds, that there's a sense of community and family with – a sense of warmth. Not necessarily family but people with whom you feel comfortable.

*Id*. at 29.

Dr. Coppinger is testifying as to her understanding of what plaintiff told her and/or her understanding of the common term "kindred spirits." Plaintiff has not persuaded the Court that this testimony should be excluded. Accordingly, plaintiff's objection on page 29, line 17 is **OVERRULED**.

### H. Plaintiff's Objection (Page 33, Line 21)[4]

Dr. Coppinger testified as to qualifications such as her academic background, license to practice medicine, her practice of medicine in Ohio, continuing education as it relates to her specialty in family practice and board certification in that area. *Id*. at 32-33. When asked whether Dr. Coppinger's opinions regarding plaintiff and her

---

[4] Again, the parties refer to an objection as appearing on page 23, line 21 of the *Coppinger Deposition*. *Final Pretrial Order*, p. 4. However, no objection appears on that page. However, an objection does appear on page 33, line 21 and the Court will again presume that the parties intended to identify this objection for the Court's consideration.

care of plaintiff have "been held within a reasonable degree of medical certainty," plaintiff objected without explanation.  *Id*. at 33.

After review of the relevant testimony, the Court sees no basis for this objection.  Accordingly, plaintiff's objection on page 33, line 21 is **OVERRULED**.

### I. Defendants'[5] Objection (Page 37, Line 21)

In response to questioning by plaintiff's counsel, Dr. Coppinger testified to part of her chart dated October 11, 2006 and relating to the witness' treatment of plaintiff.  *Id*. at 34-37.  This testimony included the following exchange:

> Q:  And I take it these handwritten notes on this page that we're talking about were not written contemporaneously with your examination of Elina Chernyak [plaintiff] on October 11th, 2006?
>
> A:  All – the only thing that would have been written afterwards would be the numbered things over here.  Everything else was written in the room.
>
> Q:  Okay.  What – what numbered things?
>
> A:  The numbered things under, "Assessment."
>
> Q:  Okay.  So –
>
> A:  Those may have been written later, but they may have been written at the same time.
>
> Q:  Okay.  From the word, "Assessment," down, anything that's in your handwriting you're not able to tell us whether they were written in the office when Elina [plaintiff] was there or at your home?
>
> A:  That's true.
>
> Q:  Could you tell us if they were written the same day as

---

[5]The parties represent that plaintiff's objection appears on page 37, line 21, *Final Pretrial Order*, p. 4, but it is defendants' objection that appears on this page.

>           opposed to the next day?
>
> A:    No.
>
> Q:    Could they have been written two days later?
>
> A:    Yes.
>
> Q:    A week later?
>
> A:    No.

*Id*. at 36-37.  Counsel then disagree as to meaning of this testimony:

> Q:    What I'm trying to find out – I'm not trying to quarrel with you [Dr. Coppinger], I'm just trying to find out if you know when you wrote what's on this page.  Because as you know, it's not consistent with what the plaintiff says she told you.
>
> MR. MANN:    Well, I'm going to object to that because the doctor said the only thing that wasn't written the same day is the small notes under, "Assessment," not this page.  So I want to be very clear as to what is written on a later date and what was written the same day that the patient was here.
>
> BY MR. FRIES:
>
> Q:    Okay.  Well, maybe I misunderstood you. . . .

*Id*. at 37-38.  Dr. Coppinger went on to testify that "only the numbered things along the left-hand side were written afterwards" and she agrees that she does not know if those things were written one, two or three days later.  *Id*. at 38-39.

After review of the relevant testimony, the Court concludes that the response of the witness appropriately clarifies the record as to the timing of the chart entries.  Accordingly, defendants' objection on page 37, line 21 is **OVERRULED**.

**J.    Defendants' Objection (Page 49, Line 19)**

Defendants raised another objection to Dr. Coppinger's testimony relating to when she made entries on plaintiff's chart:

> Q:   But there are parts of your chart that were written –
>      parts of the history that you've testified about that
>      were actually written outside the office after your
>      visit with Elina [plaintiff]?
>
> MR. MANN:  Objection.  I don't think she said history
>            was written outside the office.
>
> THE WITNESS:    This is true.
>
> BY MR. FRIES:
>
> Q:   There were parts of your chart that were written - -
>
> A:   Right.  The assessment and plan.

*Id.* at 49-50.  Thereafter, plaintiff's counsel asked what appears to be a different, unrelated question.  *Id.* at 50.  Again, it is not apparent what objection, if any, remains for the Court's consideration.  Accordingly, defendants' objection on page 49, line 19 is **OVERRULED**.

**K.   Defendants' Objection (Page 54, Line 3)**

Dr. Coppinger admitted that malpractice actions have been filed against her.  *Id.* at 53-54.  When asked how many actions had been filed against her, defense counsel objected on the basis of relevance.  *Id.* at 54.  Dr. Coppinger went on to testify regarding the details of two such actions filed against her.  *Id.* at 54-55.

After review of this portion of the *Coppinger Deposition*, the Court is not persuaded that Dr. Coppinger's testimony regarding the details of malpractice actions filed against her is relevant to the issues in this case.  This is not a medical malpractice action.  Moreover, there is no indication that the two malpractice actions about which Dr. Coppinger testified related to deficiencies in charting or to any issue that otherwise affects the credibility of Dr. Coppinger's testimony as it relates to plaintiff in this case.  *Id.*

Accordingly, defendants' objection on page 54, line 3 is **SUSTAINED**.

**III. Deposition of Gary Cordingly, M.D. (January 27, 2010)**

Plaintiff has identified Gary Cordingly, M.D. as one of her trial witnesses, *Final Pretrial Order*, p. 3. His deposition was taken on January 27, 2010.[6] *Deposition of Gary Edward Cordingly, M.D.*, Doc. No. 29 ("*Cordingly Deposition*"). Dr. Cordingly is a neurologist and part-time faculty member at the Ohio University College of Osteopathic Medicine. *Id*. at 5-7, 11. Plaintiff was a medical student on rotation in Dr. Cordingly's office. *Id*. at 12-13. After the motor vehicle accident at issue in this case, plaintiff was referred to Dr. Cordingly by her primary care provider. Dr. Cordingly first saw plaintiff as a patient on May 8, 2006. *Id*. at 13.

**A. Plaintiff's Objection (Page 45, Line 22)**

Dr. Cordingly was asked by defense counsel about the accident:

Q: Okay. Were you aware that the collision was actually relatively minor and her vehicle was not totaled?

MR. FRIES: Objection.

A: I have no knowledge of any part of the vehicular damage other than what she told me.

Q: Okay. You have to rely on what the patient tells you about how severe the collision was?

A: Correct.

*Id*. at 45-46.

The Court presumes that plaintiff objects that this question is based on facts not in evidence. However, the Court concludes that the response of the witness appropriately clarified the record in this

---

[6]Dr. Cordingly's deposition was also taken on July 22, 2010, but there are no objections from that session presented for the Court's consideration. *Final Pretrial Order*, p. 4.

13

regard.  Accordingly, plaintiff's objection on page 45, line 22 is **OVERRULED**.

    **B.**    **Plaintiff's Objection (Page 46, Line 16)**

Dr. Cordingly was later asked about plaintiff's behavior at the scene of the accident:

> Q:    Were you aware that she [plaintiff] denied injury at the scene of the accident?
>
> A:    I was not--
>
> MR. FRIES:    Objection.
>
> A:    I was not aware of that.

*Id*. at 46.

Plaintiff does not explain the basis for this objection and, again, the Court presumes that plaintiff objects to the question as assuming facts that are not in evidence or are disputed.  However, plaintiff does not provide sufficient information for the Court to determine whether or not the challenge is meritorious based on the present record.  Plaintiff's objection on page 46, line 16 is **OVERRULED**.

    **C.**    **Plaintiff's Objection (Page 48, Line 10)**

When Dr. Cordingly was asked whether plaintiff told him that "she had had another skull fracture or head injury when she was approximately age 17[,]" plaintiff objected without explanation.  *Id*. at 48.  After objection by plaintiff's counsel, Dr. Cordingly testified, "She did not."  *Id*.

The Court again presumes that the basis for this objection is that the question assumes facts that are not in evidence or are in dispute.  For the reasons articulated by the Court in connection with

14

plaintiff's other objections in this regard, plaintiff's objection on page 48, line 10 is **OVERRULED**.

    **D.    Plaintiff's Objection (Page 49, Line 1)**

Plaintiff objected when Dr. Cordingly was asked if plaintiff told him "that she had previously undergone psychological treatment and care as a result of" abuse by family members. *Id*. at 48-49.

Plaintiff does not explain the basis for her objection, leaving the Court to presume again that the challenge is based on assumed facts that are not in evidence or are in dispute. However, it is not immediately apparent from the testimony surrounding plaintiff's objection whether this objection is meritorious. Accordingly, plaintiff's objection on page 49, line 1 is **OVERRULED**.

    **E.    Plaintiff's Objection (Page 49, Line 23)**

When Dr. Cordingly was asked whether plaintiff had told him that she had been diagnosed with fibromyalgia, plaintiff objected. *Id*. at 49-50.

Again, plaintiff does not explain the basis for her objection. Based on the present record, there is insufficient information for the Court to determine whether or not this challenge is meritorious. Accordingly, plaintiff's objection on page 49, line 23 is **OVERRULED**.

    **F.    Plaintiff's Objection (Page 50, Lines 3 and 8)**

Plaintiff objected without explanation when Dr. Cordingly was asked whether plaintiff reported to him "that these conditions [chronic neck and back pain, hypermobility of her joints and fibromyalgia] were causing her to have constant pain and were

15

affecting her ability to function on a regular basis" and "that as a result of that pain and the problems she was having, that it was affecting her sleep[.]"  *Id*. at 49-50.

Plaintiff does not explain her objection, nor does she provide any information to support this objection.  Accordingly, plaintiff's objection on page 50, lines 3 and 8 are **OVERRULED**.

    G.    **Plaintiff's Objection (Page 50, Line 16)**

Plaintiff objected, without explanation, when Dr. Cordingly was asked whether "[t]hese were all previous conditions [described in the foregoing objections] that Elina Chernyak [plaintiff] did not disclose to you[.]"  *Id*. at 50.

Although the basis for plaintiff's objection is unclear, the Court will presume, again, that the challenge is based on assuming facts that are not in evidence or that are in dispute.  As with the prior objections, plaintiff fails to provide enough information for the Court to determine whether or not the challenge is meritorious.  Accordingly, plaintiff's objection on page 50, line 16 is **OVERRULED**.

    H.    **Plaintiff's Objection (Page 51, Lines 12 and 25)**

After Dr. Cordingly was asked about the records, comments, findings and test results received from another provider, plaintiff raised a continuing objection:

> [Q:]  One of the tests that Dr. Madden performed was what's called MMPI-2.  You're familiar with that test; aren't you?
>
> A:    Yes, I am.
>
>     *                *                *                *
>
> Q:    And that test suggested that she [plaintiff] was an individual who developed physical complaints in

>            response to stress, is that right?
>
>     MR. FRIES:       Objection.
>
> A:   I'm not sure it was stated in exactly those words, but
>      there was something along those lines, yes.
>
> Q:   Well, I'm looking at--
>
> A:   That she had that capacity, yes.
>
> Q:   I'm looking at that report, which says: "Objective
>      personality assessment suggests an individual who
>      develops physical complaints in response to stress."
>
> A:   Okay, let me pull out my copy, please.
>
> Q:   Sure.
>
> A:   Which page was that MMPI on?
>
> Q:   It's, I believe, on the third page.
>
>     MR. FRIES:       So I don't keep interrupting you, is
>                      there any problem with my having a
>                      continuing objection to any questions
>                      concerning anything that is included
>                      in Dr. Madden's report, any of his
>                      findings, any of his test results, or
>                      any comments that he may have made
>                      before?
>
>     MR. MANN:        No, you can have--
>
>     MR. FRIES:       Anything at all relating to Dr.
>                      Madden's examination, so I don't--
>
>     MR. MANN:        Yes, you can have a continuing
>                      objection.
>
>     MR. FRIES:       All right.  Thank you.

*Id*. at 51-52.

The Court interprets plaintiff's objection as a challenge to Dr. Cordingly's competence to opine on the comments, tests and chart of another physician.  Under Rule 702 of the Federal Rules of Evidence, a witness may qualify as an expert by reason of his or her "knowledge, skill, experience, training, or education[.]"  Moreover, an expert may

rely on facts or data that "experts in the particular field would reasonably rely on . . . ." Fed. R. Evid. 703.  Plaintiff has provided the Court with no information to determine whether or not her challenge to this portion of Dr. Coppinger's testimony is meritorious. Accordingly, based on the record presently before the Court, plaintiff's objections on page 51, lines 12 and 25 are **OVERRULED**.

    **WHEREUPON**, plaintiff's objections and defendants' objections are sustained or overruled consistent with the foregoing.


May 29, 2012                          *s/Norah McCann King*
                                                    Norah M$^c$Cann King
                                    United States Magistrate Judge